BOGGS, Circuit Judge,
dissenting.
This case calls for a careful and thoughtful analysis of the intricate interaction among cases, statutes, and the United States Sentencing Guidelines. Under such an examination, and applying the law that we are bound to apply, we should affirm, even if the majority perceives the result as “a harsh sentence.” Maj. Op. at 444. I therefore respectfully dissent.
I
The facts of this case are relatively simple. The majority opinion, however, does not include some relevant information necessary to understand the legal principles that we are bound to apply. I therefore include a brief supplemental recitation of facts.
Michael Jackson pleaded guilty to a charge of possessing, with the intent to distribute, more than five grams of cocaine base. His plea agreement provided:
the United States and defendant MICHAEL D. JACKSON stipulate and agree that the defendant’s base offense level be calculated at 30 pursuant to USSG §§ 2D1.8(a) and 1B1.3. The United States and the defendant also stipulate and agree that, pursuant to USSG § 2Dl.l(b)(l), ... the defendant’s specific offense characteristics should include a two-level enhancement for possession of a dangerous weapon. Defendant MICHAEL D. JACKSON understands that these stipulations or agreements are not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea. Additionally, notwithstanding the stipulations contained herein, the defendant understands and acknowledges that he may qualify as a USSG § 4-Bl.l career offender.
R. 52 at 5 (Plea Agreement) (italics added).
The plea agreement, then, set Jackson’s base offense level at 30. After a two-level increase for firearm possession, a two-level decrease for acceptance of responsibility, and a one-level decrease for timely notifying the authorities of his intention to plead guilty, the district court determined that, under the crack-cocaine guidelines, Jackson’s total offense level was 29, with a criminal-history category of IV, for a Guidelines range of 121-151 months.
As the plea agreement anticipated, however, Jackson’s two prior drug crimes meant that he qualified as a career offender. Thus, his pleading guilty to an offense that carried a maximum penalty of forty years of imprisonment fixed his offense level at 34. USSG § 4Bl.l(b)(2). After the three-level reduction for acceptance of responsibility and timely notifying the authorities of his intention to plead guilty, Jackson’s final career-offender offense level was 31. His career-offender status also meant that his criminal-history category *447 was automatically VI. Where, as here, “the offense level for a career offender from the [career-offender guidelines] is greater than the offense level otherwise applicable, the [career-offender] offense level ... shall apply.” USSG § 4Bl.l(b). At sentencing, therefore, Jackson’s applicable Guidelines range was his career-offender guideline range of 188-235 months.
Although the district court accepted Jackson’s plea on June 26, 2009, it did not hold a sentencing hearing until more than one year later, on July 16, 2010. There, the court indicated that it delayed sentencing “to see if Congress would change the guidelines, or the statutes, with regard to crack versus powder cocaine.”[1] It “was trying to give [Jackson] the benefit of any change in the law that might occur.” However, the court stated, the law concerning crack and powder cocaine was “not going to change, at least in the foreseeable future,” and sentencing should go forward. The court proceeded to explain: “The bigger problem here is not necessarily the crack versus the powder cocaine ratio, but the career offender issue. That’s the big problem here in your case.” Nevertheless, the district court was “willing to take into consideration the fact that [Jackson found himself] in a crack versus powder cocaine disparity that [the court believed was] ... untenable [and] ... really doesn’t have any empirical support.” Ultimately, the district court granted Jackson a downward variance from his applicable guideline range, and imposed a sentence of 150 months of imprisonment and five years of supervised release.
On July 28, 2010, less than two weeks after the district court sentenced Jackson, Congress passed the Fair Sentencing Act of 2010. President Obama signed the Bill on August 3, 2010. On October 18, 2010, the United States Sentencing Commission promulgated emergency amendments to align the Sentencing Guidelines with the Fair Sentencing Act’s new rules.[2] United States Sentencing Commission, Supplement to the 2010 Guidelines Manual 2 (2010). The emergency amendments took effect November 1, 2010. The Sentencing Commission made the amendments final, and expressly retroactive, on November 1, 2011. The Fair Sentencing Act itself, however, does not apply retroactively. United States v. Carradine, 621 F.3d 575, 580 (6th Cir.2010).[3]
II
The issue this appeal presents is whether a defendant who pleads guilty to possession with the intent to distribute crack-cocaine, but has an applicable guideline range determined entirely by the career-offender guidelines, is entitled to remand for re-sentencing because of an expressly retroactive change to the crack-cocaine guidelines scheme. The answer is a clear “no.”
A
We have long held that, when a defendant’s case is on appeal and “an amend *448 ment ... applies retroactively under § 1B1.10(c), the proper procedure is for this court to affirm the sentence but to remand for consideration of whether the prisoner is entitled to a sentence reduction under § 3582(c).” United States v. Poole, 538 F.3d 644, 646 (6th Cir.2008) (emphasis added); see also United States v. Simmons, 587 F.3d 348, 366 (6th Cir.2009) (“[W]e nevertheless remand because Simmons is entitled to a ‘second look’ consideration pursuant 18 U.S.C. § 3582(c).”) (emphasis added); United States v. Ursery, 109 F.3d 1129, 1137 (6th Cir.1997) (explaining that purpose of remand is “the opportunity to present an 18 U.S.C. § 3582(c)(2) motion for a reduction in sentence”). If, however, the amendment would not “alter the Guidelines range for this particular defendant,” remand is unnecessary and inappropriate because the district court does not have the authority to modify its original sentence. Simmons, 587 F.3d at 367.
Our published cases, then, require a two-step analysis in a case like this one. First, the court must affirm the sentence, since, as we explained in Ursery, “[t]he current sentence is not erroneous, because it was properly imposed based on the guidelines in effect at the time of sentencing.” 109 F.3d at 1137. Second, we must determine whether the defendant could qualify for a sentence reduction under the limited authority of § 3582(c)(2). Only if we answer this second question in the affirmative may we remand. Simmons, 587 F.3d at 366 (“the proper procedure for this court to follow is to affirm the sentence and remand if the amendment would alter the Guidelines range for this particular defendant.”) (emphasis added); see also United States v. Wright, 428 Fed. Appx. 608, 611-12 (6th Cir.2011).
The majority accepts its first obligation, affirming Jackson’s sentence. It does not take up its second charge. Nor could it, if it would lawfully reach its result here: a remand. See infra Part II.B. Instead, the majority remands with the somewhat cryptic instruction that the district court may “consider the retroactive crack cocaine guidelines sua sponte without the necessity of Jackson filing a motion pursuant to 18 U.S.C. § 3582(c).” Maj. Op. at 446.
If the majority means that Jackson need not file a § 3582(c) motion for the district court to consider changing his sentence, that instruction is perfectly acceptable. Ursery, citing the same Ninth Circuit footnote as the majority, explained that, while “ordinarily a defendant must first petition the district court for a sentence reduction ... if the issue is raised for the first time on appeal, the court of appeals may remand for consideration of the request.” 109 F.3d at 1138. If, however, the majority means that the district court, on remand, need not consider § 3582(c)(2), it has patently exceeded its authority. “A district court may modify a defendant’s sentence only as authorized by statute.” United States v. Pembrook, 609 F.3d 381, 383 (6th Cir.2010). The statute authorizing modification based on a retroactive change to the Sentencing Guidelines is 18 U.S.C. § 3582(c)(2). On remand, the district court must adhere to the strictures of that statute. We have no power to authorize a different result.
B
“Federal courts are forbidden, as a general rule, to modify a term of imprisonment once it has been imposed, but the rule of finality is subject to a few narrow exceptions.” Freeman v. United States, — U.S. -, 131 S.Ct. 2685, 2690, 180 L.Ed.2d 519 (2011) (internal quotation omitted). Among these is 18 U.S.C. § 3582(c)(2), which permits re-sentencing when “a defendant ... has been sen- *449 fenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission ... if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.” 18 U.S.C. § 3582(c)(2) (emphasis added). The Sentencing Commission’s policy statement provides: “A reduction in the defendant’s term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. § 3582(c)(2) if ... [an expressly retroactive] amendment ... does not have the effect of lowering the defendant’s applicable guideline range.” USSG § lB1.10(a)(2)(B). Therefore, unless Jackson’s applicable guideline range would change because of the newly amended crack-cocaine guidelines, he is not eligible for re-sentencing.
“The term ‘applicable guideline range’ in USSG ■§ 1B1.10 refers to a defendant’s pre-departure guideline range.”[4] United States v. Pembrook, 609 F.3d 381, 384 (6th Cir.2010); USSG § 1B1.10, cmt. 1(a). At sentencing, Jackson’s pre-departure Guideline range, and therefore also his applicable guideline range, was his career-offender range. This is so because his career-offender offense level was higher than his crack-cocaine offense level, and because his criminal-history category was automatically VI, by virtue of his classification as a career-offender. Id. at § 4Bl.l(b). Today, Jackson’s applicable guideline range would still be his career-offender range. Indeed, that range is no different today than it was the day the district court sentenced him. The career-offender guidelines use statutory maxi *450 mum sentences to determine offense levels. Id. at § 4Bl.l(b)(l)-(7). At sentencing, Jackson faced a statutory maximum of forty years. Under the Fair Sentencing Act, possession with the intent to distribute five grams of crack cocaine would carry a maximum sentence of twenty years. Jackson, however, could not take advantage of this change because the Fair Sentencing Act, itself, is not retroactive. Curradme, 621 F.3d at 580. Thus, he would still face a statutory maximum of forty years for his pre-Fair Sentencing Act crime, and his career-offender guidelines range would not change. Jackson’s crack-cocaine guidelines range, of course, would be lower today than it was in July of 2010. But just as Jackson’s higher career-offender range was the applicable guideline range at sentencing, so it is the applicable guideline range now. USSG § 4Bl.l(b); Pembrook, 609 F.3d at 384. Therefore, the amended crack-cocaine guidelines do not “have the effect of lowering the defendant’s applicable guideline range,” USSG § 1B1.10(a)(2)(B), and “[a] reduction in the defendant’s term of imprisonment ... is not authorized under 18 U.S.C. § 3582(c)(2).” Ibid. See also United States v. Curet, 670 F.3d 296, 309 (1st Cir.2012) (“While the amendments to the guidelines are retroactive, they are of no help to Curet because he is a career offender. If only the amended guidelines were the basis for the sentence, Curet would have a somewhat reduced base offense level under the amended drug quantity table.... But this base offense level is irrelevant given Curet’s career offender status.... [His] career offender offense level ... renders irrelevant any reduction in the base offense level.”).
In this scenario, we must, according to our circuit’s published cases, affirm without remanding. Poole, 538 F.3d at 646; Simmons, 587 F.3d at 366. Nor should we remand so that Jackson may make an argument that he is quite literally bound to lose.
Far from being “contrived,” Maj. Op. at 445, “formalistic,” ibid., or “a fiction,” Maj. Op. at 444, this is the outcome that our precedents, and the statutes and Guidelines that we are obligated to apply, compel. This outcome may not accord with a preference that Jackson not receive “a harsh sentence,” id. at 444, or for a different, “more-lenient, reading” of federal sentencing law, id. at 445 but binding cases and statutes require it.
Ill
Freeman does not compel a contrary conclusion. In Freeman, the Supreme Court addressed “whether defendants who enter into plea agreements that recommend a particular sentence as a condition of the guilty plea may be eligible for relief under § 3582(c)(2).” Freeman, 131 S.Ct. at 2690. Justice Kennedy’s plurality opinion argued that the answer was an unqualified “yes,” reasoning that: “[e]ven when a defendant enters into an 11(c)(1)(C) agreement, the judge’s decision to accept the plea and impose the recommended sentence is likely to be based on the Guidelines; and, when it is, the defendant should be eligible to seek § 3582(c)(2) relief.” Id. at 2695.
Justice Sotomayor wrote a concurring opinion, which took a slightly different tack. As a rule, she reasoned,
the term of imprisonment imposed by a district court pursuant to an agreement authorized by Federal Rule of Criminal Procedure 11(c)(1)(C) is “based on” the agreement itself, not on the judge’s calculation of the Sentencing Guidelines. However, I believe that if a(C) agreement expressly uses a Guidelines sentencing range applicable to the charged offense to establish the term of impris *451 onment, and that range is subsequently-lowered by the United States Sentencing Commission, the term of imprisonment is “based on” the range employed and the defendant is eligible for sentence reduction under § 3582(c)(2).
Id. at 2695. Justice Sotomayor’s opinion, in other words, holds that, when a plea agreement expressly incorporates a guidelines range, rather than a specific term of imprisonment, the defendant’s sentence is “based on” the Sentencing Guidelines, and is thus amenable to review under § 3582(c). Her opinion does not address the meaning of “applicable guideline range” in USSG § 1B1.10, and therefore leaves Pembrook’s holding and the Sentencing Commission’s determination on that point undisturbed. Justice Sotomayor’s concurrence, we have explained, qualifies as Freeman’s holding because it “is the narrowest ground for the Court’s decision.” United States v. Smith, 658 F.3d 608, 611 (6th Cir.2011).
Although it does not change the proper interpretation of the phrase “applicable guideline range,” Freeman does resolve a threshold question that has some bearing on this case. Jackson’s plea agreement specifically provides for sentencing pursuant to the Guidelines. Thus, his sentence is “based on” the Guidelines, rather than his Rule 11(c) plea agreement. See Freeman, 131 S.Ct. at 2695. This means that Jackson’s having been sentenced after signing a Rule 11(c) plea agreement does not prevent him from seeking relief under § 3582(c)(2) at the threshold.
What Freeman does not do, however, is vitiate Jackson’s obligation to satisfy § 3582(e)(2)’s requirements before he is eligible for relief. Thus, for the district court to have the power even to consider re-sentencing, Jackson would have to show both: (1) that he was sentenced “based on” a guideline that was subject to an expressly retroactive amendment to the Sentencing Guidelines; and (2) that “a reduction [in sentence] is consistent with applicable policy statements issued by the Sentencing Commission,” to wit: USSG § 1B1.10. 18 U.S.C. § 3582(c)(2).
Thus, even if I were to accept the majority’s claim that, because of Freeman, Jackson’s sentence was “based on” the crack-cocaine guidelines — which I do only for the sake of argument — he still would not qualify for relief. As explained above, Jackson’s applicable guideline range was at sentencing, and still is today, his career-offender range. Where, as here, an expressly retroactive amendment “does not have the effect of lowering the defendant’s applicable guideline range,” “[a] reduction in the defendant’s term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. § 3582(c)(2).” USSG § 1B1.10(a)(2)(B). Hence, even accepting the majority’s position about the basis of Jackson’s sentence in light of Freeman, remand still would not be proper because the expressly retroactive amendment to the crack-cocaine guidelines did nothing whatsoever to change Jackson’s “applicable guidelines range.” Pembrook, 609 F.3d at 384.
IV
This ease is complex, but it is not close. Principled application of the precedents that we are bound to apply can lead to only one conclusion: the panel must affirm Jackson’s sentence, and Jackson is not entitled to remand. I therefore respectfully dissent.

. At the time Jackson was sentenced, the penalties for offenses involving cocaine in "base” or “crack” form were equivalent to those for 100 times more cocaine in powdered form.

. The final rules appear in the Federal Register in May 2011, and took effect November 1, 2011. 76 Fed.Reg. 24960 (May 3, 2011).

. The Supreme Court recently heard argument in two now-consolidated cases, presenting the question whether the Fair Sentencing Act applies to defendants who committed crimes before the Act’s effective date, but were sentenced after the Act took effect. Dorsey v. United States, - U.S. -, 132 S.Ct. 759, 181 L.Ed.2d 480 (2011); Hill v. United States, - U.S. -, 132 S.Ct. 759, 181 L.Ed.2d 480 (2011). This scenario differs from Jackson’s, since Jackson both committed his crime and was sentenced before the Act took effect.

. The meaning of “applicable guideline range” in U.S.S.G. § 1B1.10 had "sharply divided the circuits.” United States v. Rivera, 662 F.3d 166, 172 (2d Cir.2011).
The First, [Second,] Third and Fourth Circuits [had held] ... that when the sentencing judge departs from a career offender range to the range established by the offense guideline, a modification under § 3582(c)(2) is available if the latter range has been lowered by the retroactive amendment. The Sixth, Eighth and Tenth Circuits ... held otherwise, declaring such defendants ineligible for reductions on the ground that their sentences were “based on” the career offender guideline, which has not been amended, despite each sentencing judge having departed from that guideline to the range provided by the offense guideline.
Id. at 172 n. 5. In its 2011 amendments, the Sentencing Commission resolved this split, adopting our circuit’s view by amending the commentary to § 1B1.10. See USSG, App'x C, Amend. 759. Now the commentary to § 1B1.10 explains:
Eligibility for consideration under 18 U.S.C. § 3582(c)(2) is triggered only by an amendment listed in subsection (c) that lowers the applicable guideline range (i.e., the guideline range that corresponds to the offense level and criminal history category determined pursuant to § IB 1.1 (a), which is determined before consideration of any departure provision in the Guidelines Manual or any variance). Accordingly, a reduction in the defendant’s term of imprisonment is not authorized under 18 U.S.C. § 3582(c)(2) and is not consistent with this policy statement if: (i) none of the amendments listed in subsection (c) is applicable to the defendant; or (ii) an amendment listed in subsection (c) is applicable to the defendant but the amendment does not have the effect of lowering the defendant’s applicable guideline range because of the operation of another guideline or statutory provision.
USSG § 1B1.10, cmt. 1(a) (emphasis added). Because this policy statement is binding in a § 3582(c) proceeding, see Dillon v. United States, — U.S. -, 130 S.Ct. 2683, 2693, 177 L.Ed.2d 271 (2010); USSG § 1B1.10, cmt. Background ("The Supreme Court has concluded that proceedings under section 3582(c)(2) are not governed by United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and this policy statement remains binding on courts in such proceedings.”), the Sentencing Commission’s interpretation of the term “applicable guideline range,” which comports with our precedent, controls.